E-FILED
Friday, 07 January, 2011 11:02:12 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| SANDRA J. FELION, | ) |
| Plaintiff, | ) |
| v. | ) No. 09-CV-3270 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff Sandra J. Felion appeals from the denial of her application for Social Security Disability Insurance Benefits (Disability Benefits). 42 U.S.C. §§ 416(I), 423. The parties consented, pursuant to 28 U.S.C. § 636(c), to have this matter proceed before this Court. Consent to Proceed Before a United States Magistrate Judge, and Order of Reference (d/e 8). This appeal is brought pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Decision of the Defendant Commissioner of Social Security is affirmed.

## STATEMENT OF FACTS

Felion was born on November 12, 1949. Answer (d/e 5), attached Certified Transcript of Proceedings before the Social Security

Administration (R.), at 19. She finished the tenth grade and later secured a GED. R. 21. She lives with her husband. Her husband is a disabled veteran, and the couple receives medical care through the Veteran's Administration. R. 21. She injured her right knee in 1971 and had arthroscopic surgery on the knee in 1998. R. 228. Felion had her right knee replaced sometime before May 13, 2005. R. 20. She claimed that she became disabled on May 13, 2005, when she fell and hurt her back. R. 19. She filed for disability benefits on December 27, 2007.

Felion worked various jobs until 2003, when she began running an inn with her husband. She did not receive any wages for her work at the inn, nor did she pay any self-employment taxes. Because she stopped earning wages in 2003, her last insured date for Disability Benefits was September 30, 2006.[1] R. 10. She testified that she could not work at the inn after the May 2005 fall. R. 23.

Felion claimed that she was disabled due to back and knee pain resulting from the fall. In addition, she claimed that she was disabled due to a gastrointestinal disorder and depression. On March 23, 2006, Dr. James D. Toombs, M.D., a staff physician at the Harry S. Truman

---

[1] She worked in 2007 to care for a mentally disabled individual, but the work was so limited and the income was so slight that the ALJ found that the work did not constitute substantial gainful activity. R. 11. Felion does not challenge this finding by the ALJ.

Memorial Veteran's Hospital in Columbia, Missouri (Truman Hospital), wrote a letter discussing Felion's back problems. R. 209. The letter was addressed to The Combined Insurance Company of America. Felion also signed the letter below Dr. Toombs' signature.

Dr. Toombs stated in the letter, in part:

Ms. Felion has been under my care for low back pain since September 2005. She reported this pain began abruptly after a fall in May 2005. She has had a complete work-up and no surgery is indicated at this time. At present, her pain in [sic] being managed with medications and periodic injections.

R. 209. Dr. Toombs stated that Felion helped operate an inn. He stated that her then current usual work activities included:

1) General cleaning including vacuuming & mopping
2) Laundry
3) Room servicing including making beds and restocking
4) Emptying garbage
5) Periodically moving furniture and shampooing carpets

R. 209. Dr. Toombs also stated:

She indicates she is on her feet much of the day. In her duties, she is constantly bending and lifting. As her pain physician, I encourage her to avoid activities that aggravate her pain and avoid activities the [sic] might injure her.

At this time, I do not believe she can complete all the duties required to be a co-owner of a motel.

R. 209.

On December 12, 2006, Felion saw Dr. Donald Snider, M.D., for an initial consultation before a colonoscopy screening. Dr. Snider noted that

Felion's medical history included, "at least two paraesophageal hernia repairs as well as a Nissen fundoplication." R. 234. Felion had hernia surgeries in 2002 and 2006. R. 268, 379. Felion also reported to Dr. Snider at the December 2006 visit that she had serious ongoing problems with diarrhea at that time. R. 234.

Dr. Snider saw Felion again on May 24, 2007. Dr. Snider stated that Felion had significant symptoms of dumping syndrome, a serious gastrointestinal condition in which her stomach did not empty properly. Dr. Snider stated:

> She has pain in the left side similar to that prior to her two hernia operation [sic]. Her x-ray showed enlargement of her stomach with significant retained food. I believe this is responsible for both the pain and the diarrhea with a gastric colic type of reflex. . . .

R. 222. During visits to Truman Hospital on October 16, 2007, and January 25, 2008, Felion reported that she had suffered from chronic intestinal problems since the 2002 surgery. R. 268, 298.

On July 23, 2007, Dr. Randall Smith, M.D., Medical Director, Physical Medicine and Rehabilitation, at the Truman Hospital, wrote a letter regarding Felion. R. 210. The letter was addressed to "Dear Sir or

Madam." R. 210. Dr. Smith stated in the letter that he first treated Felion in July 2005 and had seen her "five times since." Dr. Smith stated:

> It is my understanding that Mrs. Felion has not been able to operate her inn since 2005, but was able to resume housework last January. Unfortunately she re-injured herself in March of 07 and remains limited in her physical abilities.

R. 210. Dr. Smith then listed Felion's exertional restrictions as of the date of the letter in 2007.

On April 24, 2008, agency physician Dr. Frank Jimenez, M.D., reviewed the medical records for the purposes of conducting a residual functional assessment. Dr. Jimenez concluded that the medical records did not contain sufficient information to establish a severe impairment. R. 380-82. On April 30, 2008, agency psychologist, Dr. Leslie Fyans, Ph.D. reviewed the medical records to conduct a psychiatric review of Felion. Dr. Fyans concluded that the medical records lacked sufficient evidence to establish a severe mental impairment. R. 383-96. On June 16, 2008, agency physician Dr. David Mack, M.D., concurred with Dr. Jimenez's assessment. R. 397-99. On June 18, 2008, agency psychologist Dr. John Tomassetti, Ph.D., concurred with Dr. Fyans' assessment. R. 397-99.

On September 9, 2008, Dr. Smith completed a residual functional capacity assessment of Felion. Dr. Smith opined that Felion could occasionally lift or carry ten pounds; frequently lift or carry less than ten

pounds, stand or walk two hours in an eight-hour day; sit less than six hours in an eight-hour day; could not perform postural changes; and was limited in her ability to reach overhead.  R. 60-63.  Dr. Smith opined that these limitations started in May 2005.  R. 63.

Felion also had an appointment on December 4, 2008, with a psychologist at the Truman Hospital, Dr. Paul H. Compney, Ph.D. R. 276-79.  Dr. Compney stated that Felion's medical history included:

> life-threatening surgery in 2002, s/p paraesophageal hernia, nissan fundoplication, TKR, LBP-hernia disc; bulging disc. Reports depression symptoms "stable". . . .

R. 276.

The Administrative Law Judge (ALJ) conducted a hearing on December 11, 2008.  Felion appeared with her attorney, Terrell Dempsey. At the beginning of the hearing, the ALJ asked attorney Dempsey, "Mr. Dempsey, the usual, have you had enough time to prepare yourselves for the file, or for the hearing this morning?"  R. 18.  Attorney Dempsey responded, "Judge, we've looked at it and we've submitted everything we need to submit and I have no objections to any of the exhibits, Your Honor." R. 18.  The ALJ then proceeded with the hearing.  The ALJ received the exhibits into evidence.  R. 19.  The exhibits included statements regarding Felion's physical limitations by Felion's brother-in-law Donald W. Felion,

dated November 18, 2008, and by a friend Ann B. Barnett, dated November 22, 2008. R. 166-73.

Felion testified at the hearing. Felion testified that she became disabled on May 13, 2005, when she fell on a sidewalk and landed on her knees. R. 19. She testified that she injured her back and her knees. R. 20. Felion was four foot eleven inches tall and weighed 156 pounds at the time of the hearing. She stated that she gained fifteen to twenty pounds since the May 2005 fall. She testified that she gained the weight due to her lack of exercise and depression. R. 20.

Felion testified that she lived with her husband in an inn in Pittsfield, Illinois. R. 21. She testified that she could: lift five to ten pounds; sit for twenty to thirty minutes at a time; and stand for twenty to thirty minutes at a time. R. 23-24. Felion stated that she could not work at the inn after the May 2005 accident because of the bending, reaching, and vacuuming. R. 24. She also stated that her depression played a part. R. 25. Felion also stated that she had problems with dizziness. R. 25. She testified that she had taken methodone continuously since July 2005 for pain. R. 34.

Felion testified that her side was constantly in pain because of her stomach problems because of the dump syndrome. She said that she had diarrhea three to four times a week. During these times, she had to go to the bathroom four to five times. Each visit lasted approximately twenty

minutes. She also had problems with gas. R. 26. She testified that the problem had been severe since 2006. R. 27. She wore protective undergarments because she had accidents. R. 27.

Felion testified that she had back pain that radiates from her lower back to her right heel and to her left knee. R. 27. She also testified that she had scoliosis, or curvature of the spine. R. 28. She testified that her back pain did not allow her to bend, stretch, or lift. R. 28.

Felion testified that she had problems with depression. She saw Dr. Compney every two months.[2] She was on medication to control her depression. She had crying spells four to five times a week. She stated feelings that she was worthless brought on these spells. The spells lasted a couple of hours, usually at night. R. 29.

Felion testified that she had problems sleeping. She could not get comfortable. She stated that she has had problems sleeping since May 2005. R. 29-30. She had very low energy during the day due to the lack of sleep. R. 30. She took a two-hour nap every day to take the strain off her back. R. 30-31.

She also had difficulty driving due to her back. She testified that she occasionally drove herself on short trips of about fifteen minutes to go to the

---

[2]The transcript spells the doctor's name phonetically as "Cottoney." R. 29. The medical records indicate that "Compney" is the correct spelling. R. 279.

grocery, but normally her husband drove.  Even when her husband drove, she testified that she could only sit in a car for twenty or thirty minutes before she needed to stop and stretch.  R. 31-32.

Felion testified that she had some trouble taking care of herself.  She had some trouble dressing herself.  Her husband helped her put on socks and shoes.  He also sometimes helped her put on tops such as blouses or sweaters.  R. 32.  She also had trouble getting in and out of the tub.  She testified that she and her husband installed grab bars to assist her in getting in and out of the tub.  R. 33.

She testified that she did not attend meetings of any clubs, churches or organizations.  She did not do any housework except dishes and light cooking.  She could only wash dishes for fifteen to twenty minutes at a time because she could not stand any longer at the sink at one time.  R. 33.  The hearing concluded at the end of Felion's testimony.

## THE ALJ'S DECISION

The ALJ issued his Decision on March 16, 2009.  R. 10-15.  The ALJ followed the five step Analysis set forth in the Social Security Administration Regulations (Analysis).  20 C.F.R. §§ 404.1520, 416.920.  Step 1 requires that the claimant not be currently engaged in gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c).  If true, Step 3

requires a determination of whether the claimant is so severely impaired that she is disabled regardless of the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). The listings of such severe impairments are set forth in 20 C.F.R. Part 404 Subpart P, Appendix 1 (Listing). The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the claimant not to be able to return to her prior work considering her Residual Functional Capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot return to her prior work, then Step 5 requires a determination of whether the claimant is disabled considering her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step: The Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995); Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995).

The ALJ determined that Felion met her burden at Step 1. She was not engaged in substantial gainful activity. R. 11. The ALJ, however, found that Felion failed to meet her burden at Step 2. She did not establish that

she had a severe impairment as of the last date of her eligibility for Disability Benefits, September 30, 2006. The ALJ found that there was insufficient medical evidence of her claimed impairments on or before that date. The ALJ stated that the medical evidence of the gastrointestinal problems began in May 2007. The only significant medical evidence of the knee and back problems were the March 23, 2006, letter from Dr. Toombs, the July 23, 2007, letter of Dr. Smith, and the September 9, 2008, assessment of Dr. Smith. The ALJ found that Dr. Toombs' statements were vague. He found that Dr. Smith's statements in 2007 and 2008 were also general and after-the-fact. The ALJ noted that no treatment records showed that either doctor actually provided treatment for back or knee pain before September 30, 2006. R. 12-13.

The ALJ found that Felion's testimony regarding her condition on or before September 30, 2006, was not credible and that the 2008 statements by Donald W. Felion and Ann B. Barnett were not credible or relevant. R. 14. The ALJ, therefore, concluded that Felion did not meet her burden at Step 2 and was not disabled as of the last date of her eligibility for Disability Benefits. R. 14-15.

After the ALJ issued his Decision, Felion collected additional medical records of her treatment prior to September 30, 2006. R. 472-655; see Brief in Support of Complaint (d/e 7), at 16. Felion appealed the ALJ's Decision

and submitted the additional medical records to the Commissioner's Appeals Council as new and material evidence. R. 175. On September 4, 2009, the Appeals Council denied Felion's request for review. R. 1. Felion then brought this action for judicial review.

ANALYSIS

This Court reviews the ALJ's Decision to determine whether it is supported by substantial evidence. In making this review, the Court considers the evidence that was before the ALJ. Wolfe v. Shalala, 997 F.2d 321, 322 n.3 (7th Cir. 1993).[3] Substantial evidence is, "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ further must articulate at least minimally his analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the

---

[3]Felion does not ask for a "sentence six" remand based on the medical records that she submitted to the Appeals Council. 42 U.S.C. § 405(g) (sentence six). Such a remand would not be proper since the medical records were not new evidence and Felion has presented no showing of good cause to explain why she did not present this evidence to the ALJ in the first instance. See Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997).

analysis to determine whether the ALJ considered all the important evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

The ALJ's Decision is supported by substantial evidence. The ALJ concluded that Felion failed to meet her burden at Step 2 of the Analysis to show that she suffered from a severe impairment on or before September 30, 2006, the last date when she was eligible for Disability Benefits. See Stevenson v. Chater, 105 F.3d 1151, 1154 (7th Cir. 1997). The opinions of physicians Drs. Jimenez and Mack and the opinions of psychologists Drs. Fyans and Tomassetti support the conclusion that there was insufficient evidence to establish the existence of a severe impairment.

In this case, the ALJ was not required to give controlling weight to the opinions of Felion's treating physicians Drs. Toombs and Smith. A treating physician's medical opinion is entitled to controlling weight when it is well supported by medically acceptable clinical and diagnostic techniques and is reasonably consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. Felion provided no treatment notes, diagnostic test results, or other medical evidence from September 30, 2006, or earlier, to show that Drs. Toombs or Smith's opinions were supported by medically acceptable clinical and diagnostic techniques.

Moreover, the statements of the two doctors were inconsistent. The 2006 letter from Dr. Toombs was internally inconsistent. Dr. Toombs stated

that Felion was suffering from back pain, but he also stated that she engaged in the following activities in managing the inn:

1) General cleaning including vacuuming & mopping
2) Laundry
3) Room servicing including making beds and restocking
4) Emptying garbage
5) Periodically moving furniture and shampooing carpets

R. 209.  This level of activity was inconsistent with his opinions regarding the severity of her pain.  The level of activity provides substantial evidence to support the ALJ's conclusion that Felion's back condition was not severe.

The opinions of Dr. Smith were also inconsistent with Dr. Toombs' description of Felion's daily activities.  The 2007 letter from Dr. Smith said that Felion could not perform her duties at the inn after her injury in 2005.  Dr. Toombs, however, stated in 2006 that she was managing the inn with her husband and was performing the activities listed above at that time.  Dr. Smith's 2008 opinion that her functional capacity limitations that existed in 2008 started in May 2005 was, again, contradicted by daily work activities listed in Dr. Toombs' 2006 letter.  Felion signed Dr. Toombs' letter also, and so affirmed the accuracy of his statements.  Given the contradictions in the statements by the two doctors, and the lack of treatment evidence, the ALJ was not required to give controlling weight to either opinion.  The paucity of evidence and the contradictions in the evidence, combined with the opinions of Drs. Jimenez,, Mack, Fyans, and Tomassetti, provide

substantial evidence that Felion failed to establish that she had a severe impairment of her back and knees.

The evidence about the severity of her stomach disorder and depression on or before September 30, 2006, was similarly lacking. Felion's evidence of the onset of Felion's stomach condition was limited and inconsistent. She told healthcare providers at various times that she had chronic stomach problems since her hernia surgery in 2002. R. 268, 298. She testified at the hearing that her stomach problems became severe in 2006. R. 26. The medical evidence before the ALJ first noted the existence of a stomach condition in December 2006. R. 234. The lack of evidence of diagnosis or treatment prior to December 2006 supports the ALJ's conclusion that Felion failed to prove that this condition was severe on or before September 30, 2006.

The record before the ALJ contained little medical evidence regarding Felion's problems with depression on or before September 30, 2006. She testified that at the 2008 hearing she saw Dr. Compney every two months and was on medication for depression. The medical records from Truman Hospital contain treatment notes for various conditions in 2007 and 2008, including depression. R. 256-79. These notes provided no indication regarding the severity of the depression in September 2006 or before. The records also contained a list of diagnoses of Felion made at Truman

Hospital. R. 239-40. The list of diagnoses stated that Felion was diagnosed with major depression, recurrent in July 2005. R. 239. The records that were before the ALJ, however, contained no treatment notes, diagnostic test results, or other information about her depression in 2005 or 2006. The record before the ALJ, thus, did not give any more information about the nature of Felion's depression in 2005, including whether the depression was treated successfully at that time. The lack of evidence supports the ALJ's conclusion that Felion failed to show that her depression was a severe impairment.

Overall, the lack of evidence and the inconsistencies in the evidence, combined with the opinions of Drs. Jimenez, Mack, Fyans, and Tomassetti, provide substantial evidence to support the ALJ's conclusion that Felion failed to meet her burden at Step 2 of the Analysis.

Felion argues that the ALJ erred in not developing the record more completely. Felion argues that the ALJ should have asked for the additional medical records that Felion secured after the ALJ's Decision and presented to the Appeals Council. The ALJ has a duty to develop a complete record. See Smith v. Apfel, 231 F.3d 433, 437 (7th Cir. 2000). Felion, however, was represented by counsel. The ALJ asked counsel at the beginning of the hearing whether his client was ready for the hearing or needed additional time to collect evidence. Felion's counsel told the ALJ, "Judge, we've

looked at it and we've submitted everything we need to submit and I have no objections to any of the exhibits, Your Honor." R. 18. The ALJ did not err in believing that Felion's counsel had collected and presented all the relevant evidence. See Skinner v. Astrue, 478 F.3d 836, 842 (7th Cir. 2007); Glenn v. Secretary of Health and Human Services, 814 F.2d 387, 391 (7th Cir. 1987) (ALJ is entitled to presume that a claimant that is represented by counsel has presented the best possible case). The Court sees no error in rendering a decision based on the evidence presented.

Felion also argued that the ALJ erred in his credibility determinations. The ALJ determined that Felion's testimony about the onset of her impairments and the written statements by her friend and brother-in-law were not credible. The Court will not review the credibility determinations of the ALJ unless the determinations lack any explanation or support in the record. Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008). The ALJ's credibility findings are supported by evidence in the record. For example, Felion's testimony that she could not work after May 2005 was inconsistent with Dr. Toombs' letter (signed by Felion) listing the work that she performed on a daily basis in March 2006. The Court, therefore, will not disturb the credibility findings.

Felion last argues that the ALJ did not address the impact of Felion's obesity on her back, knee, and stomach problems. The ALJ is obligated to

consider the impact of obesity on an individual's other impairments. See Clifford v. Apfel, 227 F.3d 863, 873 (7th Cir. 2000). The ALJ, however, did not need to reach the question of the effect of obesity on Felion's impairments because Felion did not establish that she had any severe impairments as of September 30, 2006. The Court sees no reversible error with respect to the ALJ's omission of any discussion of Felion's obesity. The ALJ's Decision is supported by substantial evidence. The Court sees no grounds for reversal.

THEREFORE, the Defendant Commissioner's Motion for Summary Affirmance (d/e 13) is ALLOWED. The Decision of the Commissioner is affirmed. All pending motions are denied as moot. THIS CASE IS CLOSED.

ENTER: January 7, 2011

                           *s/ Byron G. Cudmore*
                          BYRON G. CUDMORE
              UNITED STATES MAGISTRATE JUDGE